IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,148

In the Matter of ROSIE M. QUINN,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed November 21, 2018. Indefinite suspension.

*Penny R. Moylan*, Deputy Disciplinary Administrator, argued the cause, and *Alexandar M. Walczak*, Deputy Disciplinary Administrator, was on the formal complaint for the petitioner.

*Rosie M. Quinn*, respondent, argued the cause pro se.

PER CURIAM:  This is an attorney discipline proceeding against Rosie M. Quinn, of Kansas City, Kansas. Respondent was admitted to practice law in the state of Kansas on May 15, 1981. Her license to practice law was temporarily suspended on October 5, 2011, due to felony convictions on tax-related charges in the United States District Court for the District of Kansas.

On July 18, 2014, the Disciplinary Administrator's office filed a formal complaint against respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). Respondent initially failed to answer the formal complaint, but before a scheduled panel hearing she successfully moved to have her license transferred from temporary suspension to disability inactive status. These proceedings were stayed indefinitely. On April 11, 2017, respondent's license status changed back to temporary suspension because she had not obtained an ordered independent mental health

1

evaluation. The disciplinary proceedings resumed, and the respondent answered the allegations of misconduct.

A panel of the Kansas Board for Discipline of Attorneys held a hearing on November 28, 2017. Respondent appeared pro se. The hearing panel determined she violated KRPC 8.4(b) (2018 Kan. S. Ct. R. 381) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer).

Before this court, the Disciplinary Administrator's office asked for an indefinite period of suspension made retroactive such that respondent would be eligible to apply for reinstatement immediately upon the filing of the court's decision, which also would trigger a required reinstatement hearing. Respondent expressed a preference not to be required to undergo a reinstatement hearing, so that she may immediately resume practicing law. We quote the report's pertinent parts below.

"*Findings of Fact*

. . . .

"3.     For years, the respondent engaged in the private practice of law in Kansas City, Kansas. The respondent was the sole proprietor of her law office. The respondent employed others at her law office. For an extended period of time, the respondent withheld federal employment taxes from her employees' paychecks, but did not pay over the withheld funds to the Internal Revenue Service (hereinafter 'the IRS'). In total, the respondent withheld but failed to forward more than $238,000 in federal taxes to the IRS.

"4.     In 2002 and 2003, while the respondent filed individual federal income tax returns, the respondent failed to pay her individual federal income taxes.

2

"5.     On June 17, 2009, a federal grand jury, convened in the United States District Court for the District of Kansas, returned a nine count indictment against the respondent including seven counts of violating 26 U.S.C. § 7202 (willful failure to pay employment taxes) and two counts of violating 26 U.S.C. § 7203 (willful failure to pay income taxes).

"6.     After she was charged, the respondent paid the IRS the previously withheld but unpaid federal employment taxes. After the respondent paid the employment taxes, the grand jury returned a second indictment which reflected that the employment taxes were no longer owing. The criminal case proceeded to trial. On March 15, 2011, a jury convicted the respondent as charged.

"7.     On June 21, 2011, the respondent self-reported the convictions. On October 5, 2011, the Kansas Supreme Court issued an order under Rule 203(c), temporarily suspending the respondent's license to practice law, due to her felony convictions. The respondent filed a motion to vacate the order of temporary suspension. On October 12, 2011, the Court denied the respondent's motion.

"8.     On November 18, 2011, the federal court sentenced the respondent to a controlling sentence of 36 months in prison, 36 months post-release supervision, and restitution in the amount of $70,118.34, for the interest which previously accumulated on the unpaid employment taxes, for the individual federal income taxes, and for the interest on the individual federal income taxes. On May 7, 2014, the United States Court of Appeals for the Tenth Circuit affirmed the respondent's convictions and sentence. Following prison, the respondent went to a half-way house. After being released from the half-way house, the respondent returned home on post-release supervision. On August 5, 2017, the respondent was released from post-release supervision. While the respondent has been released from post-release supervision, she continues to owe and pay restitution.

"9.     . . . On July 8, 2014, the hearing panel scheduled a hearing on the formal complaint for November 18, 2014.

3

"10.     On July 18, 2014, Alexander M. Walczak, deputy disciplinary administrator, filed a formal complaint in the instant disciplinary case, alleging that the respondent violated [KRPC] 8.4(b), 8.4(c), and 8.4(d). That same day, Mr. Walczak filed a notice of hearing, confirming that a hearing on the formal complaint was scheduled for November 18, 2014. The respondent failed to file a timely answer to the formal complaint. On October 8, 2014, Mr. Walczak filed a supplement to the formal complaint, alleging that the respondent violated Rule 211(b) by failing to file an answer to the formal complaint.

"11.     On October 28, 2014, Mr. Walczak filed a motion *in limine*, seeking an order prohibiting the respondent from attempting to impeach her criminal convictions by reopening or retrying the facts of her convictions, presenting evidence on her motives, and arguing a lack of fairness of procedural or evidentiary standards.

"12.     On November 7, 2014, the respondent filed a motion to transfer her license to disability inactive status. The respondent attached a letter from her treating psychiatrist, dated November 6, 2014, as well as an evaluation from her treating psychiatrist, dated December 23, 2010. On November 10, 2014, the hearing panel filed a petition with the Court under Rule 220(b) seeking to have the respondent's license immediately transferred to disability inactive status. That same day, the hearing panel indefinitely continued the hearing on the formal complaint. On November 13, 2014, because of the sensitive nature of the contents of the motion and attachments, Mr. Walczak filed a motion seeking an order sealing the motion and attachments. Also, on November 13, 2014, Mr. Walczak filed a motion seeking an order for an independent mental health evaluation of the respondent to determine whether the respondent's license should remain transferred to disability inactive status.

"13.     On November 20, 2014, the Court issued an order transferring the respondent's license to disability inactive status. The Court's order also directed the respondent to undergo an independent mental health evaluation within 90 days by one of two mental health professionals listed in the order. Finally, the Court ordered that the respondent's motion and attachments be maintained under seal.

4

"14.     On January 20, 2015, the respondent filed a motion to rescind the order for an independent mental health evaluation or, in the alternative, a motion allowing the respondent to select the evaluator. On January 30, 2015, Deborah L. Hughes, deputy disciplinary administrator, filed a response to the respondent's motion. On April 29, 2015, the Court granted the respondent's motion and directed the respondent to select a mental health professional from a list of five and undergo an independent mental health evaluation within 90 days.

"15.     The respondent did not submit to an independent mental health evaluation within 90 days, as ordered by the Court on April 29, 2015.

"16.     On September 21, 2016, Ms. Hughes filed a motion with the Court seeking an order directing the respondent to show cause why she failed to comply with the Court's April 29, 2015, order. The respondent did not file a response to the motion.

"17.     On January 26, 2017, the Court issued an order to the respondent to appear on March 15, 2017, and show cause why she had not complied with the April 29, 2015, order to undergo an independent mental health evaluation. On March 15, 2017, Ms. Hughes and the respondent appeared before the Court. Thereafter, on April 11, 2017, the Court issued an order, concluding that the respondent failed to comply with the Court's previous orders dated November 18, 2014, and April 29, 2015. The Court directed that the respondent's license be transferred to temporary suspension. Finally, the Court directed the disciplinary administrator to proceed with the pending disciplinary proceedings against the respondent.

"18.     On June 26, 2017, the hearing panel scheduled a hearing on the formal complaint for November 28, 2017. On June 29, 2017, Ms. Hughes filed a notice of hearing, confirming that a hearing on the formal complaint was scheduled for November 28, 2017.

"19.     On November 6, 2017, the respondent filed an answer to the formal complaint. That same day, the respondent filed an answer to the supplement to the formal complaint.

5

"20.     On November 28, 2017, the hearing panel conducted the hearing on the formal complaint. The disciplinary administrator appeared through Ms. Hughes. The respondent appeared in person. During the hearing, the hearing panel admitted Exhibits 1 through 17, offered by the disciplinary administrator and Exhibits A through H, offered by the respondent. Exhibits 14 and 15 were admitted under seal.

"*Conclusions of Law*

"21.     In the formal complaint and the supplement to the formal complaint, the disciplinary administrator alleged that the respondent violated [KRPC] 8.4(b), 8.4(c), 8.4(d), and 211(b). At the hearing on the formal complaint, Ms. Hughes withdrew the allegations that the respondent violated [KRPC] 8.4(c), 8.4(d), and 211(b). Thus, the hearing panel considered only whether the respondent's conduct was in violation of [KRPC] 8.4(b).

"22.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated [KRPC] 8.4(b), as detailed below.

"[KRPC] 8.4(b)

"23.     'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' [KRPC] 8.4(b). The respondent was convicted of seven felonies for failing to pay over more than $268,000 withheld from employees' paychecks to the IRS. Additionally, the respondent was convicted of two misdemeanors for failing to pay her individual federal income taxes. The hearing panel concludes that convictions for willfully failing to pay employment taxes and willfully failing to pay individual income taxes are criminal acts that reflect adversely on the respondent's trustworthiness and fitness as a lawyer in other respects. Accordingly, the hearing panel concludes that the respondent violated [KRPC] 8.4(b).

6

"24.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"25.     *Duty Violated*. The respondent violated her duty to the legal profession and to the public to maintain her personal integrity.

"26.     *Mental State*. The respondent knowingly violated her duties.

"27.     *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to the legal profession.

"28.     *Aggravating and Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

    a.     <u>Prior Disciplinary Offenses</u>. The respondent has been previously disciplined on three occasions.

        1)     On October 4, 1999, following a hearing on a formal complaint, a hearing panel of the Kansas Board for Discipline of Attorneys informally admonished the respondent for having violated [KRPC] 1.15 (safekeeping property).

7

2)      On May 30, 2001, the disciplinary administrator informally admonished the respondent for having violated [KRPC] 1.15 (safekeeping property).

3)      On May 23, 2008, the Court concluded that the respondent violated [KRPC] 1.15 (safekeeping property), 5.3 (responsibilities regarding nonlawyer assistance), and 8.4(c) (professional misconduct involving dishonesty, fraud, deceit, or misrepresentation). The Court imposed conditions on the respondent. According to the opinion, if the respondent did not comply with the conditions, the Court would impose a one year suspension of the respondent's license to practice law.

b.      Dishonest or Selfish Motive. The respondent's misconduct, the willful failure to pay federal employment taxes and individual federal income taxes, was motivated by her self-interest in fueling her gambling addiction.

c.      A Pattern of Misconduct. The respondent engaged in a pattern of misconduct by willfully failing to pay the federal employment taxes for an extended period of time.

d.      Substantial Experience in the Practice of Law. The Court admitted the respondent to practice law in the State of Kansas in 1981. At the time of the misconduct, the respondent had been practicing law for approximately 30 years.

e.      Illegal Conduct, Including that Involving the Use of Controlled Substances. The respondent's misconduct in this case was in violation of 26 U.S.C. § 7202 and 26 U.S.C. § 7203 and resulted in the respondent's conviction of seven felonies and two misdemeanors.

"29.      Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its

8

recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a.      Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct. The respondent suffers from depression and an addiction to gambling. It is clear that the respondent's depression and addiction contributed to her misconduct.

b.      Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney. Previously, the respondent was an active and productive member of the bar of Kansas City, Kansas. Notably, the respondent spent her career representing the financially disadvantaged population in Kansas City, Kansas. The respondent enjoys the respect of her peers and former clients and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

c.      Imposition of Other Penalties or Sanctions. For this misconduct, the respondent spent three years in prison and three years on supervised release.

d.      Remorse. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

e.      Remoteness of Prior Offenses. The misconduct which gave rise to the respondent's prior discipline is remote to the misconduct in this case.

"30.      In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standard:

"'5.12   Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

9

"31.     Ms. Hughes recommended that the respondent's license be indefinitely suspended and that the suspension be made retroactive to three years prior to the date of this final hearing report. Alternatively, Ms. Hughes recommended that the respondent's license to practice law be suspended for a period of one year, made retroactive to the date of the hearing on the formal complaint, November 28, 2017.

"32.     The respondent recommended that her license be suspended for one year and that the effective date of the suspension be made retroactive. The respondent, however, did not specify to what date the order of suspension should be made retroactive.

"33.     The respondent presented compelling testimony that she has been rehabilitated. The respondent has not practiced law for eight years, as her license has been temporarily suspended or transferred to disability inactive status throughout that time period. Also, the respondent has not gambled for eight years. The respondent acknowledged that if she resumes gambling she will 'literally die.'

"34.     The hearing panel is persuaded by the compelling mitigating evidence presented in this case. Accordingly, based upon the findings of fact, conclusions of law, the aggravating factors, the mitigating factors, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license be suspended for a period of three years. The hearing panel further recommends that the suspension be made retroactive to the date of the respondent's temporary suspension, October 5, 2011. The hearing panel recognizes that based on the history of this case, if the Court adopts the hearing panel's recommendation, the respondent would be eligible for reinstatement without further proceedings at the time the Court's opinion is released. The hearing panel concludes that this is an appropriate discipline to be imposed because, even excluding the time the respondent's license was on disability inactive status, the respondent's license has already been suspended for more than four years.

"35.     Costs are assessed against the respondent in an amount to be certified by the disciplinary administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the panel's findings, and the parties' arguments and determines whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see also Supreme Court Rule 211(f) (2018 Kan. S. Ct. R. 251) (a misconduct finding must be established by clear and convincing evidence). "Clear and convincing evidence is 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent filed no exceptions to the final hearing report. As such, the panel's factual findings are deemed admitted. Supreme Court Rule 212(c), (d) (2018 Kan. S. Ct. R. 255).

The evidence before the hearing panel establishes by clear and convincing evidence the charged conduct violated KRPC 8.4(b) (misconduct). We adopt the panel's findings and conclusions.

The only remaining issue is determining the appropriate discipline for respondent's violation. The hearing panel unanimously recommended respondent's license be suspended for a three-year fixed period. The hearing panel further recommended the suspension be made retroactive to the date of the respondent's temporary suspension, October 5, 2011. Before this court, the Disciplinary Administrator's office recommended

11

respondent's license be indefinitely suspended and that the suspension be made retroactive to three years prior to the final hearing report, which would require the respondent to undergo a reinstatement hearing under Supreme Court Rule 219 (2018 Kan. S. Ct. R. 264) before returning to the practice of law. As a practical matter, the necessity for a reinstatement hearing is the only difference between the two recommendations.

The hearing panel's recommendations are advisory only and do not prevent us from imposing greater or lesser sanctions. Supreme Court Rule 212(f); *In re Kline*, 298 Kan. 96, 212-13, 311 P.3d 321 (2013).

After careful consideration, a majority of the court holds respondent should be indefinitely suspended effective as of October 5, 2011—the date this court first temporarily suspended respondent's license to practice law. The majority sets this effective date with the understanding respondent will be eligible to apply for reinstatement under Rule 219 as of the date of this decision, which will require a reinstatement hearing. A minority of the court would disbar respondent.

In entering this order of discipline, the court notes respondent has not been authorized to practice law since October 2011. Accordingly, before reinstatement will be ordered, respondent must complete a bar exam review course approved by the court for that purpose, as well as complete additional continuing legal education as follows:  10 hours of law practice management and 10 hours of ethics. Respondent may fulfill the bar exam review and other continuing legal education requirements while her application for reinstatement is pending, but they must be completed before reinstatement will be ordered by this court. Respondent is not required to retake the bar exam, but only a review course typically used in preparation in advance of the examination. Additional conditions for reinstatement may be explored by the Disciplinary Administrator's office,

a reinstatement panel, or the court during the reinstatement process. Those issues may include whether respondent is currently in compliance with this court's prior orders, including submitting to an independent mental health evaluation. See Supreme Court Rule 219(d)(4)(H).

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Rosie M. Quinn be and she is hereby disciplined by indefinite suspension in accordance with Supreme Court Rule 203(a)(2) (2018 Kan. S. Ct. R. 234), effective as of October 5, 2011.

IT IS FURTHER ORDERED that respondent comply with Supreme Court Rule 219, including undergoing a reinstatement hearing. As part of the reinstatement process, respondent must complete a bar exam review course approved by the court for that purpose, as well as complete additional continuing legal education as follows:  10 hours of law practice management and 10 hours of ethics. Respondent may fulfill the bar exam review and other continuing legal education requirements while her application for reinstatement is pending, but they must be completed before reinstatement will be ordered by this court. Respondent is not required to retake the bar exam, but only a review course typically used in preparation in advance of the examination. Additional conditions for reinstatement may be explored by the Disciplinary Administrator's office, a reinstatement panel, or the court during the reinstatement process.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.